**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ANTHONY HERBERT** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-952** |
| **NEW ORLEANS CITY, ET AL.** | **SECTION I** |

## ORDER & REASONS

Plaintiff Anthony Herbert ("Herbert") filed this action, *pro se*, on behalf of his deceased mother, Schwann Herbert, who was killed on March 20, 2019, when a vehicle being chased by officers of the New Orleans Police Department ("NOPD") crashed into a building where Ms. Herbert was a patron.[1] The plaintiff has asserted federal claims pursuant to 42 U.S.C. § 1983 and state law claims against the City of New Orleans (the "City"), the NOPD, and members of the NOPD in their individual and official capacities.[2]

---

[1] *See* R. Doc. No. 1.

[2] The NOPD defendants are: NOPD Superintendent Shaun Ferguson and six NOPD officers, namely Alex Mikkelsen, Jonathan Broom, Jeffrey Harrington, Alex Florian, William Hery, and Colby Stewart. *Id.* at 2–5 ¶ 4. The Court will refer to the NOPD officers as the "defendant officers."

It is unclear from the complaint whether Ferguson and the defendant officers are named in their individual and/or official capacities. In light of the liberality with which this Court interprets the pleadings of *pro se* litigants, *Gressett v. New Orleans City*, 779 F. App'x 260, 261 (5th Cir. 2019), the Court interprets the complaint as naming the defendants in both capacities. *See Cousin v. Delaney*, No. 14-76, 2015 WL 589972, at *2 (M.D. La. Feb. 11, 2015); *Lewis v. Cain*, No. 11-0118, 2011 WL 4577542, at *2 (M.D. La. Sept. 8, 2011), *report and recommendation adopted,* No. 11-118, 2011 WL 4577386 (M.D. La. Sept. 30, 2011).

1

The City, the NOPD, NOPD Superintendent Shaun Ferguson ("Ferguson"), and three of the defendant officers, Alex Mikkelsen ("Mikkelsen"), William Hery ("Hery"), and Colby Stewart ("Stewart"), (collectively, the "defendants") move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] They argue that they cannot be liable under § 1983 because plaintiff has failed to state a claim adequately alleging any constitutional violations or a policy, practice, or custom that caused the alleged constitutional violations.[4] Ferguson and the defendant officers who filed motions to dismiss—Hery, Stewart, and Mikkelsen—also assert that the Court should dismiss the claims against them in their individual capacities because they are entitled to qualified immunity.[5] The defendants also ask that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claim.[6] For the following reasons, the motion is granted.[7]

## I.

Accepting all of the factual assertions in the complaint as true, they are as follows: on March 20, 2019, the defendant officers attempted to conduct a traffic stop of a vehicle they believed to be stolen.[8]  The vehicle did not stop, and it instead

---

[3] R. Doc. Nos. 10, 12, & 14.
[4] R. Doc. No. 10-1, at 2; R. Doc. No. 12-1, at 3; R. Doc. No. 14-1, at 3.
[5] R. Doc. No. 10-1, at 2; R. Doc. No. 12-1, at 3; R. Doc. No. 14-1, at 3.
[6] R. Doc. No. 10-1, at 20; R. Doc. No. 12-1, at 16; R. Doc. No. 14-1, at 16.
[7] The Court recently granted the defendants' motion to dismiss in a related case, *Carney v. New Orleans City*, No. 20-901, 2020 WL 3469835 (E.D. La. June 25, 2020) (Africk, J.), which was a suit brought on behalf of one of the deceased vehicle passengers.
[8] R. Doc. No. 1, at 5 ¶ 5.

accelerated away from the defendant officers.[9] The defendant officers proceeded to engage in a high-speed pursuit of the vehicle.[10]  During the defendant officers' pursuit of the vehicle, the driver of the fleeing vehicle lost control and crashed into the Unity I Beauty Supply & Hair Salon (the "Salon"), located at 4125 Washington Avenue in New Orleans, Louisiana.[11]  The crash ignited a fire, engulfing the Salon in flames.[12]

Ms. Herbert, the plaintiff's mother, was a patron at the Salon when the crash occurred that caused the building to catch fire.[13]  Ms. Herbert was tragically unable to escape from the Salon before sustaining fatal injuries, from which she later died.[14]

Following this incident, the NOPD Public Integrity Bureau conducted an investigation and concluded that six officers, the defendant officers, violated the NOPD's Vehicle Pursuit Policy (the "Pursuit Policy").[15]  According to the Pursuit Policy, officers may engage in a vehicle pursuit only when they "can articulate a suspect is attempting to evade arrest or detention for a crime of violence . . . ; [t]he escape of the subject would pose an imminent danger of death or serious bodily injury to the officer or to another person; and . . . [t]he suspect is fleeing in a vehicle after having been given a signal to stop by a commissioned member who has identified

---

[9] *Id.*
[10] *Id.*
[11] *Id.* at 5–6 ¶ 6.
[12] *Id.*
[13] *Id.* at 6 ¶ 7.
[14] *Id.*
[15] *Id.* 6–7 ¶¶ 8, 10.

themselves as a police officer[.]"[16]   Officers must also receive supervisory approval before initiating a pursuit.[17]

The defendant officers violated the Pursuit Policy when they chased the vehicle on March 20, 2019, as they did not suspect that the vehicle occupants had committed a violent crime; they turned their video surveillance cameras off so that no video evidence of the pursuit could be reviewed; and they lied about stopping the pursuit prior to the fatal crash.[18]   As a result of these violations, four of the defendant officers were terminated and two were suspended without pay.[19]   Namely, the NOPD fired Mikkelsen, Jonathan Broom, Jeffrey Herrington, and Alex Florian, and it suspended Stewart and Hery without pay.[20]

The defendant officers' violations of the Pursuit Policy on March 20, 2019 were not the first instances in which at least some of the defendant officers engaged in similar conduct.[21]   For example, Stewart received a letter of reprimand in August 2016 after an internal investigation revealed that he had failed to record his response to several 911 calls the year before.[22]   Ferguson has also stated that internal investigators uncovered a pattern of officers deactivating their cameras during

---

[16] *Id.* 6 ¶ 9.  Section 9 of the Pursuit Policy is excerpted in the complaint. *Id.*
[17] *Id.*
[18] *Id.* at 7 ¶ 11. The complaint states that the entirety of the Pursuit Policy is attached to the complaint as Exhibit 1.  *Id.* at 6 ¶ 8. No exhibits are attached to the complaint. However, the Court assumes, for the purpose of the instant motions, that these violations are prohibited by the Pursuit Policy.
[19] *Id.* at 7 ¶ 12.
[20] *Id.*
[21] *Id.* at 7 ¶ 13.
[22] *Id.*

4

vehicle pursuits in the weeks leading up to the fatal March 20, 2019 pursuit.[23] Stella Cziment, the City's deputy independent policy monitor, expressed that she found it "concerning" that several unauthorized and unrecorded pursuits occurred in the weeks preceding the March 20, 2019 pursuit.[24]   The defendant officers allegedly engaged in this pattern of conduct in an effort to prevent their superiors from discovering pursuits that may have violated the Pursuit Policy.[25]

The complaint further alleges that Ferguson and the NOPD knew of the defendant officers' pattern and practice of engaging in unauthorized and unrecorded vehicle pursuits, but that they failed to take any corrective action to prevent such violations from recurring.[26]

## II.

### A. Rule 12(b)(6) Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

---

[23] *Id.* at 7 ¶ 14.
[24] *Id.* at 7 ¶ 16.
[25] *Id.* at 8 ¶ 15.
[26] *Id.* at 8 ¶ 17.

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, the Court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). On a Rule 12(b)(6) motion to dismiss, "the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

A *pro se* complaint is to be liberally construed. *Gressett*, 779 F. App'x at 261. "Even a liberally construed *pro se* civil rights complaint," however, "must set forth facts giving rise to a claim on which relief may be granted." *Id.* (citation omitted). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMill*an, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco*

*Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). Where applicable, qualified immunity can operate as one such bar.[27]

### B. Qualified Immunity

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

Where a public official invokes qualified immunity as a defense to a civil action against him, the plaintiff has the burden of establishing a constitutional violation and overcoming the defense. *Jackson v. Texas*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).

---

[27] The Court, upon the plaintiff's request, continued the deadline to file a response in opposition by two weeks to July 14, 2020. *See* R. Doc. No. 18. To date, the plaintiff has not filed a response or requested another continuance. However, the Court must still consider the sufficiency of the plaintiff's complaint before granting the defendants' motions to dismiss. *See Webb v. Morella*, 457 F. App'x 448, 452 n.4 (5th Cir. 2012).

To meet this burden, a plaintiff must show both "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). A court has discretion to decide which of the two prongs of the qualified immunity analysis to examine first. *Jackson*, 959 F.3d at 200.

At the 12(b)(6) stage, to hold that a defendant violated the law under the first prong of the qualified immunity analysis is to say that, taking the facts in the light most favorable to the plaintiff, the plaintiff has stated a claim upon which relief may be granted—that is, that the alleged conduct violated a constitutional right. *Morgan*, 659 F.3d at 384; *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

As to the second prong, "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alteration in original). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Jackson*, 959 F.3d at 201 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). If a plaintiff alleges that an official's conduct violated a clearly established right, then a court must determine "whether the official's conduct was objectively reasonable under the law at the time of the incident." *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005); *see also Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would

have then known that the [official's] conduct violated the plaintiff's rights." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).

To deny qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). Precedent existing at the time of the challenged conduct "must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

When the defense of qualified immunity is raised in a motion filed pursuant to Rule 12(b)(6), "it is the defendant's conduct as alleged *in the complaint* that is scrutinized for 'objective legal reasonableness.'" *McClendon*, 305 F.3d at 323 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). A court must determine that a plaintiff's pleadings "assert facts which, if true, would overcome the defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

### III.

Count one of the complaint asserts a claim pursuant to 42 U.S.C. § 1983 against the NOPD, Ferguson, and the defendant officers for violations of substantive

due process under the Fourth and Fourteenth Amendments.[28]  Count two asserts a claim against the NOPD and Ferguson for failure to train and discipline the defendant officers under 42 U.S.C. § 1983.[29]  Count three asserts a negligence claim under state law against the City, the NOPD, Ferguson, and the defendant officers.[30]  Count four asserts vicarious liability under state law against the City, the NOPD, and Ferguson.[31]

As a preliminary matter, the claims against the NOPD must be dismissed because it is not recognized as a legal entity or person capable of being sued.  *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 691 (E.D. La. 2012) (Feldman, J.); *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007) (Beer, J.) (explaining that Louisiana law governs whether the NOPD is an entity that can be sued, pursuant to Fed. R. Civ. P. 17(b), and that under Louisiana law, the NOPD is not a juridical person capable of being sued).

The Court will first examine the plaintiff's federal claims of Fourth and Fourteenth Amendment violations, as well as the alleged failure to train and discipline; it will then address its jurisdiction over the state law claims.

### A. Constitutional Claims

Count one, which arises under 42 U.S.C. § 1983, alleges that the actions of the defendant officers in connection with the March 20, 2019 pursuit violated Ms.

---

[28] R. Doc. No. 1, at 8–11 ¶¶ 19–34.
[29] *Id.* at 11–13 ¶¶ 35–41.
[30] *Id.* at 13–15 ¶¶ 42–48.
[31] *Id.* at 15 ¶¶ 49–51.

Herbert's "clearly established constitutional rights under the Fourteenth Amendment to bodily integrity and [to] be free from injury by law enforcement with due process."[32] The complaint further alleges that the "[d]efendant officers' actions in instituting and carrying on an unreasonably dangerous high speed pursuit in contravention of [the Policy] were objectively unreasonable in light of the facts and circumstances confronting them and, thus, violated the Fourth and Fourteenth Amendment rights" of Ms. Herbert.[33] The plaintiff asserts that the defendant officers' actions amounted to "a shocking and willful indifference to" Ms. Herbert's rights and constitute "a malicious abuse of authority unmotivated by a legitimate governmental interest."[34] The complaint further alleges that Ferguson's actions "in permitting the pursuit to continue in clear violation of [the Policy] . . . violated the Fourth and Fourteenth Amendment rights" of Ms. Herbert.[35]

Liberally construing the well-pleaded factual allegations in the complaint, count one alleges that Ferguson and the defendant officers' actions constituted an illegal seizure, excessive force, and denial of due process in violation of the Fourth

---

[32] *Id.* at 9 ¶ 22.

[33] *Id.* at 9 ¶ 24.

[34] *Id.* at 10–11 ¶¶ 30, 32.

[35] *Id.* at 9–10 ¶ 25. No other factual allegations in the complaint support the assertion that Ferguson was aware of the March 20, 2019 pursuit as it was occurring and made the decision not to order the officers to cease the pursuit. However, the Court assumes this allegation is true for purposes of the instant motions.

and Fourteenth Amendments.  Count one also appears to allege a failure to intervene claim against Ferguson.[36]

Ferguson, Hery, Stewart, and Mikkelsen do not dispute that all six of the defendant officers, including Hery, Stewart, and Mikkelsen, who were involved in the March 20, 2019 pursuit, did not comply with the Pursuit Policy.  Rather, they argue that the plaintiff's § 1983 claims must be dismissed because the complaint fails to state a claim of any constitutional violation.[37]  They also assert that they are entitled to qualified immunity.[38]

*i. Section 1983*

Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law. *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'"

---

[36] As previously discussed, all claims asserted against the NOPD must be dismissed. Therefore, the Court only considers the plaintiff's first claim for relief with respect to Ferguson and the defendant officers.

[37] R. Doc. No. 10-1, at 6–7; R. Doc. No. 12-1, at 8; R. Doc. No. 14-1, at 8.

[38] R. Doc. No. 10-1, at 12; R. Doc. No. 12-1, at 15; R. Doc. No. 14-1, at 15.

*Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008), *cert. denied*, 572 U.S. 1087 (2014).

To state a § 1983 claim against Ferguson and the defendant officers in their official capacities, the allegations in the complaint must satisfy the elements required to establish municipal liability. This is because § 1983 claims asserted against officers in their official capacities are really claims against the government entity. *Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir. 2009) ("[O]fficial capacity suits are really suits against the governmental entity[.]"); *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) ("In any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued . . . [t]he official-capacity claims and the claims against the governmental entity essentially merge.").  A municipality may be liable under § 1983 when a plaintiff establishes that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

The Court next considers whether the plaintiff adequately alleges constitutional violations necessary to establish claims under § 1983. The Court first examines the allegations of illegal seizure, then substantive due process, and finally, excessive force.

### ii. Fourth Amendment Seizure

The Fourth Amendment protects the right to be secure from unreasonable seizures. U.S. Const. amend. IV.  A person is seized by the police and thus entitled to

challenge the government's action under the Fourth Amendment when the officer, "by means of physical force or show of authority, terminates or restrains h[er] freedom of movement, . . . *through means intentionally applied*." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations and quotation marks omitted) (emphasis in original). "Physical force is not required to effect a seizure; however, absent physical force, '*submission* to the assertion of authority'" is necessary. *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [he was] not free to leave." *Id.*; *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988).

The high-speed pursuit by the defendant officers did not constitute an unconstitutional seizure of Ms. Herbert in violation of the Fourth Amendment. In *Brower v. County of Inyo*, the United States Supreme Court examined a related issue—whether an unconstitutional seizure occurs when there is a "police chase in which the suspect unexpectedly loses control of his car and crashes." 489 U.S. 593, 595 (1989). The Supreme Court explained:

> [I]f a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. . . .
>
> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

14

*Id.* at 596–97.

Ms. Herbert, like the innocent passerby who is unintentionally pinned against the wall by a police car, was not subject to a Fourth Amendment seizure when the vehicle being chased by the defendant officers crashed into the Salon and trapped her inside. *See id.* The defendant officers did not terminate her freedom of movement through means intentionally applied. *See id.* Therefore, Ms. Herbert's death, though tragic, does not give rise to a Fourth Amendment violation. *See Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) (finding that no seizure occurred where the plaintiff's "termination of freedom of movement" was not accomplished "through means intentionally applied").[39]

Therefore, the plaintiff failed to allege a seizure that amounts to a constitutional violation. Accordingly, the § 1983 claim must be dismissed against Ferguson, Hery, Stewart, and Mikkelsen in both their official and individual capacities. The lack of an underlying constitutional violation would be fatal to a claim against a municipality and, therefore, it is fatal to a claim against Ferguson, Hery, Stewart, and Mikkelsen in their official capacities. *See Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279–80 (5th Cir. 2015); *see also Whitley*, 726 F.3d at 639 n.3 ("To the extent [plaintiff] asserts claims against Appellees in their official

---

[39] *Gorman* involved an "accidental fatal shooting during an officer training session"; Mississippi Gaming Commission instructor Robert Sharp "forgot to replace his real firearm with a 'dummy' firearm" and "accidentally discharged his real firearm" against his fellow instructor John Gorman. 892 F.3d at 173. The Fifth Circuit found that a Fourth Amendment violation was not established because the "shooting here of Gorman—as tragic as it was—was not 'willful[ly]' performed by Sharp." *Id.* at 175.

capacities, we find such claims . . . fail for lack of an underlying constitutional violation.").

Because the plaintiff has not plausibly alleged a Fourth Amendment claim of an unconstitutional seizure, he has also failed to meet his burden to overcome the defense of qualified immunity asserted by Ferguson, Hery, Stewart, and Mikkelsen. *See Magee*, 675 F.3d at 869 (affirming the district court's finding that the defendants were entitled to qualified immunity and explaining that "[b]ecause we determine that the Does have failed to state a violation of [their child's] constitutional rights, we need not further consider the qualified immunity analysis"); *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) ("If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity.").[40] This claim, therefore, also must be dismissed against Ferguson, Hery, Stewart, and Mikkelsen in their individual capacities.

---

[40] While the Court finds that the plaintiff has failed to overcome the defense of qualified immunity invoked by Ferguson, Hery, Stewart, and Mikkelsen because the plaintiff has not plausibly alleged a Fourth Amendment claim of an unconstitutional seizure, the Court notes Fifth Circuit caselaw suggesting that the § 1983 claims against Ferguson, Hery, Stewart, and Mikkelsen may be dismissed without reaching the qualified immunity issue. *See Goodman.*, 571 F.3d at 396 (explaining that because the plaintiff failed to set forth a § 1983 claim, "an analysis of [the defendant's] defense of qualified immunity is unnecessary. Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity."); *Lytle*, 560 F.3d at 410 ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

### iii. Fourteenth Amendment Due Process

The Fourteenth Amendment right to due process protects the individual "against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). When faced with a due process challenge, a court must determine whether the behavior of the governmental officer "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018) (quoting *Lewis*, 523 U.S. at 847 n.8). The "shock the conscience" standard is satisfied "where the conduct was 'intended to injure in some way unjustifiable by any government interest,' or in some circumstances if it resulted from deliberate indifference." *Id.* (quoting *Lewis*, 523 U.S. at 849–50).

The plaintiff claims that the actions of the defendant officers "shocks the conscious [sic] and amounted to reckless, callous, and deliberate indifference to [Ms.] Herbert's federally protected rights."[41] The complaint also alleges that the defendant officers violated Ms. Herbert's rights by "fail[ing] to terminate the high-speed pursuit when it was immediately evident, or should have been immediately evident to them, that the risks of life and property far outweighed the benefit derived from the immediate apprehension or continued pursuit of the suspect's vehicle."[42] The complaint asserts that the defendant officers, "after sufficient time for deliberation and in violation of established policy, knowingly operated their vehicles at excessively high rates of speed, in essence compelling the fleeing suspects to travel erratically

---

[41] R. Doc. No. 1, at 10 ¶¶ 26, 30.
[42] *Id.* at 10 ¶ 29.

17

and at dangerously high speeds."[43]  The plaintiff alleges that the pursuit caused the driver of the fleeing vehicle to lose control and crash into the Salon, igniting a fire and causing Ms. Herbert's fatal injuries—"the only scenario by which the case could conclude: a violent collision on a high traffic road."[44]  According to the complaint, the "potential for serious harm to an innocent bystander was not only foreseeable, [but] assured."[45]

In *Lewis,* the Supreme Court articulated the standards to be applied when determining whether a police pursuit resulting in harm violates the injured party's substantive due process rights. 523 U.S. at 833. The Supreme Court stated that the "touchstone of the due process clause is protection of the individual against arbitrary action of government," and that with respect to abusive executive action, only "conscience shocking" or "the most egregious official conduct" is so arbitrary as to violate due process. *Id.* at 845–47 & n. 8. *Lewis* made clear that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849.In addition, the Supreme Court held that in the context of high-speed police chases, even deliberate indifference or recklessness would be insufficient to state a claim under the due process clause. *Id.* at 852–53. Accordingly, *Lewis* concluded that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redress[a]ble by an action under § 1983." *Id.* at 854 & n.13 (citing

---

[43] *Id.* at 10–11 ¶ 31.
[44] *Id.* at 11 ¶¶ 32–33.
[45] *Id.* at 11 ¶ 32.

*Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986) ("Where a citizen suffers physical injury due to a police officer's *negligent use* of his vehicle, no section 1983 claim is stated. It is a different story when a citizen suffers or is seriously threatened with physical injury due to a police officer's *intentional misuse* of his vehicle.")).

The allegations presented in the complaint are slightly different from those considered in *Lewis*, as Ms. Herbert was an innocent bystander rather than a fleeing suspect. However, *Lewis*'s reasoning still controls. The plaintiff does not allege that the defendant officers intended to physically harm bystanders, such as Ms. Herbert, when they engaged in the unauthorized police chase.[46] At most, the complaint alleges that the defendant officers knew or should have known that substantial harm *could* occur to bystanders such as Ms. Herbert as a result of their actions, and that they were negligent in their pursuit of the suspects.[47] Such a claim for negligently inflicted harm does not constitute a violation of Fourteenth Amendment due process. *See Lewis*, 523 U.S. at 849.

---

[46] While the officers did not comply with the Pursuit Policy, "[a] failure to follow official policy, by itself shows, at most, negligence and cannot support a finding of deliberate indifference." *Mason*, 806 F.3d at 279.

[47] The complaint alleges that the defendant officers intentionally created a scenario which could *only* end in a violent collision on a highly trafficked road. R. Doc. No. 1, at 11 ¶ 32. This is not a factual assertion, and the plaintiff alleges no facts in his complaint supporting this assertion. Accordingly, the Court cannot plausibly infer from the face of the complaint that the defendant officers intended to harm bystanders such as Ms. Herbert when they engaged in the unauthorized pursuit. *See Covington v. City of Madisonville, Texas*, 812 F. App'x 219 (5th Cir. 2020) ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Accepting the well-pleaded factual allegations in the amended complaint as true, the Court finds that Herbert fails to plausibly allege a violation of the Fourteenth Amendment right to due process. Therefore, the substantive due process claim against Ferguson, Hery, Stewart, and Mikkelsen in their official capacities must be dismissed. This claim against Ferguson, Hery, Stewart, and Mikkelsen in their individual capacities must also be dismissed because, in the absence of a plausibly alleged constitutional violation, the plaintiff cannot overcome the defense of qualified immunity.

### iv. Excessive Force

The complaint's well-pleaded factual allegations also assert a claim of excessive force. The complaint does not specify whether this claim is asserted under the Fourth Amendment or the Fourteenth Amendment. The complaint broadly alleges that the defendant officers' conduct was "aggressive and unreasonable" and "assured" serious harm against an innocent bystander, such as Ms. Herbert.[48] The plaintiff further alleges that the defendant officers engaged in the pursuit "after sufficient time for deliberation and in violation of established policy."[49]

While "excessive-force claims are typically analyzed under the Fourth Amendment," the Fifth Circuit "ha[s] recognized that an excessive-force claim may be asserted as a violation of due process" under the Fourteenth Amendment. *Hernandez v. United States*, 757 F.3d 249, 267–68 (5th Cir. 2014); *see Petta v. Rivera*,

---

[48] R. Doc. No. 1, at 11 ¶ 32.
[49] *Id.* at 10–11 ¶ 31.

143 F.3d 895, 900 (5th Cir. 1998) (concluding that a plaintiff may bring a § 1983 claim of excessive force in violation of the Fourteenth Amendment). Under both the Fourth and Fourteenth Amendments, "an excessive force claim brought under § 1983 . . . begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right[.]" *Id.*

Accepting the well-pleaded allegations in the amended complaint as true, the Court finds that the plaintiff has failed to state a claim of excessive force under either the Fourth Amendment or the Fourteenth Amendment. Because the plaintiff has not plausibly alleged that Ms. Herbert was "seized" in violation of the Fourth Amendment, he cannot state a claim of excessive force under the Fourth Amendment. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) ("To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that [she] was seized."). Similarly, because the defendant officers' actions, as previously discussed, do not "shock the conscience," the excessive force claim under the Fourteenth Amendment also fails. *See Graham*, 490 U.S. at 394; *Petta*, 143 F.3d at 902 (holding that, to establish an excessive force claim under the Fourteenth Amendment, a plaintiff must prove that an officer's actions "caused them . . . injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience").

Accordingly, the plaintiff's claim of excessive force under the Fourth Amendment and the Fourteenth Amendment must be dismissed against Ferguson, Hery, Stewart, and Mikkelsen in their official capacities. The excessive force claim under the Fourth and Fourteenth Amendment must also be dismissed against Ferguson, Hery, Stewart, and Mikkelsen in their individual capacities because the plaintiff cannot overcome their defense of qualified immunity in the absence of a showing of a constitutional violation.

### v. Failure to Intervene

An officer may be liable under § 1983 under a "failure to intervene" or "bystander liability" theory where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley*, 726 F.3d at 646 (citations omitted). However, if no constitutional violation for excessive force is shown, there is no bystander liability for failing to intervene. *Davis v. Cannon*, 91 F. App'x 327, 329 (5th Cir. 2004).

The complaint alleges that Ferguson "permit[ed] the pursuit to continue in clear violation of the NOPD Pursuit Policy," which "violated the Fourth and Fourteenth Amendment rights" of Ms. Herbert.[50]

As discussed, *supra*, the defendant officers did not violate Ms. Herbert's constitutional rights. Accordingly, Ferguson cannot be held liable under a failure to

---

[50] R. Doc. No. 1, at 9–10 ¶ 25. To be clear, Ferguson was not one of the six officers involved in the unauthorized pursuit that led to Ms. Herbert's death. *See* R. Doc. No. 1, at 6–7 ¶¶ 10–12.

intervene or bystander liability theory and this claim must be dismissed against Ferguson in his official capacity. *See id*. The claim must also be dismissed against Ferguson in his individual capacity because the plaintiff cannot overcome Ferguson's defense of qualified immunity in the absence of a showing of a constitutional violation.

## B. Failure to Train and Discipline

Count two alleges that Ferguson failed to train and discipline the defendant officers, which "amounts to deliberate indifference."[51]  According to the complaint, Ferguson was aware of "a pattern and practice . . . of NOPD officers ignoring the [Pursuit Policy] by turning off their video surveillance and pursuing suspects at high speeds, even when those suspects were not suspected of . . . violent crime," and Ferguson "did nothing to prevent [these violations] or train officers to abide by the [Pursuit Policy]."[52]  The plaintiff concludes that "Ferguson's inaction lead [sic] to the violation of Ms. Herbert's constitutional rights[.]"[53]

Supervisory officials cannot be liable under § 1983 for the actions of subordinates on any theory of vicarious or *respondeat superior* liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Rather, a plaintiff must show either that the supervisor "personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between

---

[51] R. Doc. No. 1, at 12 ¶¶ 39–40. The plaintiff also asserts this claim against the NOPD. As previously discussed, the NOPD is not a suable entity and all claims asserted against it must be dismissed.
[52] *Id*. at 12–13 ¶ 41.
[53] *Id*.

the supervisor's conduct and the constitutional violation." *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir. 1987)); *see Estate of Davis*, 406 F.3d at 381 ("Plaintiffs must show that the conduct of the supervisors denied [the decedent] his constitutional rights.").

Because the plaintiff has failed to plausibly state a Fourth Amendment or Fourteenth Amendment violation, Ferguson cannot be liable for any alleged failure to train or discipline based on these asserted constitutional violations. *See Romero v. City of Grapevine, Texas*, 888 F.3d 170, 178–79 (5th Cir. 2018) ("In order to confer liability on the City and [the police chief] for deficient supervisory conduct, there must be 'a sufficient causal connection between [the City's] conduct and the constitutional violation.' '[I]t is facially evident that this test cannot be met if there [are] no underlying constitutional violations.'") (internal citation omitted) (quoting *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006)); *Whitley*, 726 F.3d at 648 ("All of [the plaintiff's] inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation.").    Accordingly, the plaintiff's failure to train and discipline claim must be dismissed against Ferguson in his official capacity. *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425–26 (5th Cir. 2006). This claim must also be dismissed against Ferguson in his individual capacity because, in the absence of a plausibly alleged constitutional violation, the plaintiff has not met his burden to overcome Ferguson's defense of qualified immunity.

## C. State Law Claims

A district court has wide discretion when deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011). The general practice in the Fifth Circuit is to dismiss state claims when the federal claims to which they are pendent are dismissed. *Id.*

Having concluded that the plaintiff's federal law claims should be dismissed, only his state law claims remain. A district court may decline to exercise supplemental jurisdiction over a state law claim if:

      (1) the claim raises a novel or complex issue of State law,

      (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

      (3) the district court has dismissed all claims over which it has original jurisdiction, or

      (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to these factors, the Fifth Circuit has instructed district courts to consider the common law factors of "judicial economy, convenience, fairness, and comity." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Id.*

These factors weigh in favor of dismissal without prejudice of the Louisiana state law claims so that the plaintiff may assert those claims in Louisiana state court. The Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C.

§ 1367(c)(3). "Moreover, allowing Louisiana courts to rule on Louisiana law encourages fairness between the parties by 'procuring for them a surer-footed reading of applicable law.'" *Fountain v. New Orleans City*, No. 18-145, 2018 WL 3475375, at *2–3 (E.D. La. July 19, 2018) (Africk, J.) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (citations omitted)). "[D]eference in this case with respect to the state law issue[s] promotes the important interest of comity to state courts." *Id.* Furthermore, the parties will not be unduly prejudiced because the litigation is still in its early stages.

Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## IV.

For the foregoing reasons,[54]

**IT IS ORDERED** that the motion to dismiss is **GRANTED**. All claims asserted against the NOPD are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the federal law claims asserted in counts one and two against Shaun Ferguson in his individual and official capacities, William Hery in his individual and official capacities, Colby Stewart in his individual and official capacities, and Alex Mikkelsen in his individual and official capacities are **DISMISSED WITH PREJUDICE**.

---

[54] The Court finds that granting plaintiff leave to amend would be futile. *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) ("[L]eave to amend need not be granted when it would be futile to do so.").

**IT IS FURTHER ORDERED** that the state law claims asserted in counts three and four against the City of New Orleans, Shaun Ferguson, William Hery, Colby Stewart, and Alex Mikkelsen are **DISMISSED WITHOUT PREJUDICE** to their being timely asserted in state court.

New Orleans, Louisiana, August 10, 2020.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**